# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AKI T. OYA and SOUCHI OYA,<br><br>                                   Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A., et al.,<br><br>                                  Defendants. | Case No.: 3:18-cv-01999-H-BGS<br><br>**ORDER DENYING MOTION TO ALTER OR AMEND JUDGMENT**<br><br>[Doc. No. 58] |

      On July 17, 2019, the Court issued an order granting Defendants Select Portfolio Servicing, Inc.'s and Wells Fargo Bank, N.A.'s (collectively, "Defendants") motion to dismiss Plaintiffs Aki T. Oya's and Souchi Oya's (collectively, "Plaintiffs") third amended complaint without leave to amend, as Plaintiffs could not cure the deficiencies in their complaint despite three opportunities to do so. (Doc. No. 56 at 11.) On August 15, 2019, Plaintiffs filed a motion to amend the judgment under Rule 59(e). (Doc. No. 58.) Defendants filed an opposition on September 9, 2019. (Doc. No. 59.) Plaintiffs filed their reply on September 16, 2019. (Doc. No. 62.) For the reasons below, the Court denies Plaintiffs' motion to alter or amend the judgment.

/ / /

/ / /

**Background**

This is a motion to amend the Court's judgment dismissing Plaintiffs' claims related to Defendants' efforts to conduct a foreclosure sale after Plaintiffs' sixth consecutive bankruptcy petition. In April 2014, Plaintiffs defaulted on the deed of trust securing their residence, and they have made no payments since.[1] (Doc. No. 45-5 at 3.) Defendants recorded a notice of default on April 6, 2016, initiating foreclosure proceedings. (Doc. No. 45-3 at 65-67.) But Defendants were unable to conduct a foreclosure sale because Plaintiffs subsequently filed bankruptcy petitions on six separate occasions.[2] (See Doc. No. 43 at 85.)

Plaintiffs filed their first bankruptcy petition on September 6, 2016. The bankruptcy court dismissed the case and all automatic stays were vacated January 20, 2017. (See Bankruptcy Petition No. 16-05492-CL13; Doc. No. 45-3 at 80.) Plaintiffs filed a second bankruptcy petition on October 18, 2017. The bankruptcy court dismissed the case on November 7, 2017. (See Bankruptcy Petition No. 17-06297-MM13; Doc. No. 43 at 85.) Plaintiffs filed a third case on February 15, 2017. The bankruptcy court dismissed the case on March 6, 2017 for failure to file required schedules, statements, a Chapter 13 plan, certificate of credit counseling, and a statement of current monthly income. (See Bankruptcy Petition No. 17-00783-CL13; Doc. No. 45-3 at 86.) Plaintiffs filed a fourth case on June 17, 2017, and the bankruptcy court dismissed it on June 26, 2017. (See Bankruptcy Petition No. 17-03553-MM13; Doc. No. 43 at 85.) Plaintiffs filed a fifth case on April 12, 2018, and the bankruptcy court dismissed the case on May 2, 2018 because Plaintiffs again failed to file schedules, statements, and a Chapter 13 plan. (See Bankruptcy Petition No. 18-02170-CL13; Doc. No. 45-3 at 92.)

---

[1] The Court took judicial notice of the bankruptcy order's "Order on Motion for Relief/Annulment of Automatic Stay" filed by Plaintiffs. (Doc. No. 45-5). See Fed. R. Evid. 201(b)(2).

[2] The Court took judicial notice of the bankruptcy court dockets filed by Defendants. (Doc. No. 45-3 at 76-112.) See Fed. R. Evid. 201(b)(2).

In Plaintiffs' sixth bankruptcy petition, Plaintiff Aki T. Oya filed for bankruptcy protection on June 15, 2018, three days before the scheduled foreclosure date. (Doc. No. 43 ¶¶ 30–31.) Throughout the process of filing this petition, Plaintiffs did not provide documentation required by the bankruptcy court. (See id. at 85.)

Defendants held the foreclosure sale on June 18, 2018 and sold the property for $915,300. (Id. ¶¶ 41, 43.) On June 26, 2018, the purchaser filed a motion to retroactively annul the stay with the bankruptcy court. (Id. ¶ 52.) On July 3, 2018, the bankruptcy court dismissed Plaintiffs' sixth bankruptcy petition because Plaintiff Aki T. Oya again did not file schedules, a statement of financial affairs, or a plan. (See id. at 85) On August 15, 2018, the bankruptcy court granted the purchaser's motion to retroactively annul the stay and validate the foreclosure sale. (Id. ¶ 58.) On August 27, 2018, Plaintiffs filed a motion with the bankruptcy court for reconsideration of the order granting annulment of the stay. (Doc. No. 45-3.)

The bankruptcy court granted in part and denied in part Plaintiffs' motion for reconsideration on October 26, 2018. (Doc. No. 45-3 at 119-23.) It denied the motion to reconsider the bankruptcy court's order "to the extent that the order annulled the stay as to [the purchaser]," but the bankruptcy court noted "the absence of a motion by Wells Fargo to annul the stay as to it as well." (Id. at 120-21.) Thus, the court granted reconsideration of its order retroactively validating the entirety of the June 18, 2018 sale, "without prejudice to Wells Fargo bringing its own stay annulment motion and requesting sale validation should annulment be granted." (Id. at 121 n.4.) On March 8, 2019, Defendant Wells Fargo filed its motion for stay relief in the bankruptcy court. (Doc. No. 45-3 at 2-22.) On April 17, 2019, the bankruptcy court granted Defendant Wells Fargo's motion and annulled the bankruptcy stay, granting both "prospective and retroactive stay relief." (Doc. No. 45-5.)

While Plaintiffs litigated the validity of the foreclosure sale, from August 15, 2018 to October 26, 2018, Defendant Select sent Plaintiffs billing statements for past due mortgage statements. (Id. ¶ 79.) Defendant Select sent a letter on September 28, 2018,

noting that a foreclosure sale was set for November 14, 2018. (Id. ¶ 145; at 116.) Additionally, on October 1, 2018, a notice of trustee sale was recorded setting a sale date of November 18, 2018. (Id. ¶ 147.) On October 8, 2018, Defendants' counsel sent a letter to Plaintiffs' counsel informing them that the letter and notice of sale were inadvertently recorded and that "[t]he November 14, 2018 sale date will be canceled, regardless of the outcome of the Reconsideration Motion." (Doc. No. 43 at 119-20.)

During the bankruptcy court proceedings, Plaintiffs also filed a complaint in this Court on August 27, 2018. (Doc. No. 1.) Defendants filed a motion to dismiss Plaintiffs' complaint on September 19, 2018. (Doc. No. 12.) On November 2, 2018, the Court granted Defendants' motion to dismiss Plaintiffs' complaint with leave to amend. (Doc. No. 21.) On December 3, 2018, Plaintiffs filed an amended complaint (Doc. No. 23), and Defendants filed their motion to dismiss on December 13, 2018. (Doc. No. 26.) On January 9, 2019, the Court granted Defendants' motion to dismiss Plaintiffs' amended complaint with leave to amend. (Doc. No. 25.) Plaintiffs filed a second amended complaint on January 20, 2019 (Doc. No. 31), and Defendants filed a motion to dismiss on February 4, 2019. (Doc. No. 32.) On March 25, 2019, the Court invited the parties to submit supplemental briefing due to the U.S. Supreme Court's decision in Obduskey v. McCarthy & Holthus LLP, 139 S. Ct. 1029 (2019) (Doc. No. 39.) On April 19, 2019, the Court granted Plaintiffs' motion to file an amended complaint. (Doc. No. 42.)

Plaintiffs filed their third amended complaint on May 6, 2019 (Doc. No. 43), and Defendants filed a motion to dismiss Plaintiffs' third amended complaint on May 21, 2019 (Doc. No. 45.) This Court granted Defendants' motion to dismiss Plaintiffs' third amended complaint without leave to amend, as Plaintiffs could not cure the deficiencies in their complaint despite three opportunities to do so. (Doc. No. 56 at 11.)

/ / /

/ / /

/ / /

/ / /

## Discussion

### I. Legal Standards

Federal Rule of Civil Procedure 59(e) gives district courts the power to reconsider a previous ruling or entry of judgment. Rule 59(e) offers an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." Kona Enter. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000) (quoting 12 James Wm. Moore et al., Moore's Federal Practice § 59.30[4] (3d ed. 2000)). Thus, "a motion for reconsideration should not be granted, absent highly unusual circumstances." Id. These motions are only granted in the rare case where "(1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law." Ybarra v. McDaniel, 656 F.3d 984, 998 (9th Cir. 2011) (quoting Zimmerman v. City of Oakland, 255 F,3d 734, 740 (9th Cir. 2001)). A Rule 59(e) motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the judgment of entry." Exxon Shipping Co. v. Baker, 554 U.S. 471, 485 n.5. (2008) (internal citation omitted); see also Weeks v. Bayer, 246 F.3d 1231, 1236 (9th Cir. 2001) (Rule 59(e) motion may not be used to reargue an issue already presented to the court to get a "second bite at the apple").

Plaintiffs do not identify any change in controlling law or newly discovered evidence. Instead, they submit their motion to amend or alter the judgment solely on claims that the court committed clear legal or factual error. (Doc. No. 58-1.) To establish clear error or manifest injustice, the reviewing court must be "left with the definite and firm conviction that a mistake has been committed." Smith v. Clark Cty. Sch. Dist., 727 F.3d 950, 955 (9th Cir. 2013) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)). "[M]ere dissatisfaction with the court's order or belief that the court is wrong in its decision are not adequate grounds for relief." SLPR, LLC v. San Diego Unified Port Dist., 2010 WL 2349204, at *1 (S.D. Cal. Jun. 8, 2010); see Twentieth Century-Fox Film Corp. v. Dunnahoo, 637 F.2d 1338, 1341 (9th Cir. 1981).

## II. Analysis

### A. Plaintiffs' First Claim Under 11 U.S.C. § 362 and 11 U.S.C. § 1301.

Plaintiffs argue that the Court's decision on Plaintiffs' first claim was made in clear error and is manifestly unjust for four reasons: (1) the Court improperly considered the "new argument" that the bankruptcy court's retroactive relief under § 362(d) eliminates Defendants' liability under § 362(k); (2) the Court misread Schwartz v. United States (In re Schwartz), 954 F.2d 569 (9th Cir. 1992); (3) the matter should be stayed pending Plaintiffs' appeal of the bankruptcy court's ruling; and (4) the Court erred by dismissing the § 1301 claim alongside the § 362 claim without analyzing the § 1301 claim separately. (Doc. No. 58-1 at 6-13.)

First, Plaintiffs argue the Court improperly considered Defendants' argument that § 362(d) retroactive relief eliminated § 362(k) liability. But Plaintiffs raised the argument in their opposition to the motion to dismiss, stating, "[m]ore significantly, numerous BAP decisions concur that 362(k) damages remain even in the event annulment relief is granted to validate an otherwise void act." (Doc. No. 50. at 13.) Thus, Plaintiffs opened the door for consideration of this claim. See Eberle v. City of Anaheim, 901 F.2d 814, 818 (9th Cir. 1990) ("We could consider the issue had appellees raised it in their brief."). Additionally, the Court retains discretionary authority to consider arguments raised for the first time, especially when they present "a pure question of law" and the other party "will not be unfairly prejudiced." Silveira v. Apfel, 204 F.3d 1257, 1260 n.8 (9th Cir. 2000). Whether a bankruptcy court's order for retroactive relief negates § 362(k) liability is a pure question of law. Also, Plaintiffs are not prejudiced by the Court's consideration of the question since Plaintiffs briefed the issue (Doc. No. 50 at 13), and both the parties and the Court addressed the issue several times in prior motions and orders. (See Doc. Nos. 12-1 at 5; 21 at 4-5; 46-1 at 4; 51 at 4.)

Second, Plaintiffs argue that the Court misread Schwartz v. United States (In re Schwartz), 954 F.2d 569 (9th Cir. 1992). Plaintiffs had opportunity to address In re Schwartz prior to judgment, but did not do so. It is thereby improper to raise this argument

in a Rule 59(e) motion. Exxon Shipping Co., 554 U.S. at 485 n.5. Nevertheless, as the Court explained in its order, In re Schwartz states, "[i]f a creditor obtains retroactive relief under section 362(d), there is no violation of the automatic stay, and whether violations of the stay are void or voidable is not at issue." 954 F.2d at 573. Plaintiffs argue that In re Schwartz does not address damages under § 362(k). But if there is no violation of the stay, there can be no damages for violating the stay under § 362(k). See also In re Williams, 386 F. App'x 608, 609 (9th Cir. 2010) ("The bankruptcy court correctly denied Williams' request for damages for violation of the automatic stay because the stay was retroactively annulled.").

Plaintiffs also argue that In re Schwartz is "taken out of context," since In re Schwartz addressed the question of whether creditor violations of the automatic stay provision are void or voidable. That In re Schwartz addressed the ultimate question of whether violations of the automatic stay are void or voidable does not change the reasoning it reached along the way. In order to hold that violations of the automatic stay are void, In re Schwartz had to rebut an alternative interpretation of § 362(d) and § 549 that could compel a reading of automatic stays as voidable. Id. at 572 (citing cases in other circuits reading § 362(d) to suggest that automatic stays are voidable). When rebutting the alternative interpretation, In re Schwartz recognized that retroactive relief nullifies any violation of the stay. Id. ("With that understanding, section 362(d) gives the court the power to ratify retroactively any violation of the automatic stay which would otherwise be void."). See also In re Kissinger, 72 F.3d 107, 108-09 (9th Cir. 1995) (citing In re Schwartz for the proposition that bankruptcy courts have power to grant retroactive relief from an automatic stay).

Plaintiffs then cite Bankruptcy Appellate Panel ("BAP") cases and a Third Circuit case suggesting that they are entitled to § 362(k) damages, notwithstanding an order retroactively validating the violation of a bankruptcy stay. These cases do not provide grounds for clear error. Rulings from the BAP, an Article I court, are not binding on this

Court.[3] Nor do the BAP cases cited persuade the Court, since they lack authority to support their claim that damages may still be available not withstanding annulment. The BAP cases all rely on In re Williams's comment that "case law has not yet definitively addressed whether an action taken in violation of the stay, validated by annulment after the fact, may nonetheless serve as the basis for an award of money damages if the debtor has suffered an injury." 323 B.R. 691, 702 (B.A.P. 9th Cir. 2005) (hereinafter In re Williams (2005)).

But that holding was reversed by In re Williams, 2008 WL 11334031, at *1-2 (C.D. Cal. Jan. 16, 2008) (hereinafter "In re Williams (2008)"), aff'd, 386 F. App'x 608 (9th Cir. 2010). In re Williams (2008) concluded that "once a stay is retroactively annulled . . . the opportunity for stay-violation damages is eliminated." Id. at *5. Reviewing the BAP's reasoning, the district court found that the only case In re Williams (2005) cited for damages notwithstanding annulment was Matter of Edisto Res. Corp., 158 B.R. 954, 958 (Bankr. D. Del. 1993). The district court wrote,

> Edisto Resources does not demand a contrary conclusion. There, the court did not decide the question of damages following an annulment of the stay, but rather simply treated the stay as terminated once the damages for the violations were settled between the parties. In other words, the court's action more accurately reflected a termination of the stay, despite its use of the term "annulment." In fact, the facts of the case did not require the court to annul any violations, but rather simply required it to lift the stay to allow the minority shareholders to pursue the state-court action prospectively. Had the court been faced with the question presented here, the result likely would have been different.

In re Williams (2008), 2008 WL 11334031 at *4. Thus, In re Williams (2005) and subsequent BAP cases citing it do not establish that Defendants are subject to § 362(k)

---

[3] See N. Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 85-87 (1982) (bankruptcy courts' initial grant of jurisdiction under the Bankruptcy Act of 1978 violated Article III because it removed "the essential attributes of the judicial power from the Art. III district court" and "vested those attributes in a non-Art. III adjunct"); In re Burley, 738 F.2d 981, 985 (9th Cir. 1984) (bankruptcy courts' power improper where "the district court does not retain the 'essential attributes of the judicial power,' because it does not have sufficient control over the ultimate decision").

damages notwithstanding retroactive annulment.

Plaintiffs' citation of In re Myers, 491 F.3d 120, 130 (3d Cir. 2007) is also not persuasive. In re Myers wrote, "it is appropriate for the Bankruptcy Court to impose damages" for a violation of an automatic stay "even if those violations are later ratified by annulment of the stay," and the court supported this conclusion solely by citing In re Atlantic Business and Community Corporation, 901 F.2d 325, 328–29 (3d Cir.1990). But In re Atlantic did not make such a ruling. In re Atlantic dealt with a party that violated an automatic stay, and involved no annulment, retroactive or otherwise. Id. ("[W]e agree with the district court that the actions taken by Cuffee violated the automatic stay provisions of Section 362(a)(3) of the Bankruptcy Code.").

The only reasoning to support damages notwithstanding annulment is In re Williams (2005)'s "analogy" likening the violation of an automatic stay to how "one may be held in contempt notwithstanding the reversal of the order violated." 323 B.R. at 702.[4] But the caselaw on contempt is inapposite. The U.S. Supreme Court's contempt cases involved injunctions invalid on collateral grounds. See, e.g., Walker v. Birmingham, 388 U.S. 307 (1967). Those contempt cases are distinct from the instant case where a stay is annulled. In the case of contempt, the reversal of an injunction does not change the fact that the injunction was in place when the party violated it. In the case of retroactive annulment, however, the automatic stay is treated "as if it never existed." In re Williams, 124 B.R. 311, 316 (Bankr. C.D. Cal. 1991) (hereinafter In re Williams (1991)).

Contempt cases are further distinguishable because a court has exercised its equitable judgment to issue the injunction, whereas § 362 issues stays automatically. In the

---

[4] In re Williams 323 B.R. 691 (B.A.P. 9th Cir. 2005) was affirmed by an unpublished Ninth Circuit opinion, 204 F. App'x 582 (9th Cir. 2006). The unpublished opinion, however, did not address In re Williams (2005)'s discussion of whether violations of a stay may serve as a basis for damages even when validated by retroactive annulment. Id. When the case returned to the Ninth Circuit, it affirmed that "[t]he bankruptcy court correctly denied Williams' request for damages for violation of the automatic stay because the stay was retroactively annulled." In re Williams, 386 F. App'x 608, 609 (2010).

9

case of injunctions, the U.S. Supreme Court held that a party should be punished for violating even an erroneous injunction because a court "with equity powers" issued the injunction "upon pleadings" and "served [the injunction] upon persons made parties therein and within the jurisdiction." United States v. United Mine Workers of Am., 330 U.S. 258, 293–94 (1947) (quoting Howat v. Kansas, 258 U.S. 181, 189 (1922)). In contrast, § 362 issues stays automatically, and a court assesses the equities of a § 362 stay only after post-hoc review. 11 U.S.C. § 362(d); In re Williams (1991), 124 B.R. at 316. Thus, violations of § 362's automatic stays cannot be analogized to contempt penalties when a party violates an injunction because § 362 introduces a court's equitable review only after the stay has issued. Putting them on the same plane would invert the courts' role, rendering penalties first, equitable judgment later.[5] Consequently, Plaintiffs do not establish clear error in the Court's ruling on Plaintiffs' § 362(k) claim.

Third, Plaintiffs argue that the Court should have stayed the matter pending the resolution of Plaintiffs' appeal of the bankruptcy court decision. Plaintiffs never filed a motion to stay proceedings, despite having three months to file a motion between the bankruptcy court's April 17, 2019 order (Doc. No. 45-5) and this Court's July 17, 2019 order granting Defendants' motion to dismiss. (Doc. No. 56.) Further, the Court has "inherent power to control the disposition of the causes on its docket with the economy of time and effort for itself, for counsel, and for litigants." United States v. U.S. Dist. Court for N. Mariana Islands, 694 F.3d 1051, 1058 (9th Cir. 2012), as amended (Oct. 16, 2012) (internal citations omitted). The Court's exercise of discretion here is not properly subject to a Rule 59(e) motion.

Fourth, Plaintiffs argue that the Court erred because "there was no annulment of the

---

[5] Here, the bankruptcy court stopped short of applying its equitable analysis to § 362(k) damages only because Plaintiffs never presented the § 362(k) claim to the bankruptcy court. (Doc. No. 45-5 at 11.) ("The § 362(k) Litigation — which involves a formally pled cause of action — could have been brought in this court as a simple motion. The court recognizes this as forum shopping, further supporting the conclusion that the equities warrant annulment." (internal citations omitted))

debtor stay under 1301 nor argument or analysis of the same by DEFENDANTS or this Court."[6] (Doc. No. 58-1 at 12-13.) Again, this presents arguments already considered by this Court. The Court analyzed § 1301, the co-debtor stay, together with § 362:

> Here, the bankruptcy court granted Defendants' motion for stay relief. (Doc. No. 45-5.) Given that the bankruptcy court has the power to grant retroactive relief from a stay, and the bankruptcy court granted such relief in this case, no stay violation occurred. See In re Schwartz, 954 F.2d 569, 573 (9th Cir. 1992) ("If a creditor obtains retroactive relief under section 362(d), there is no violation of the automatic stay. . . ."). Accordingly, Plaintiffs' argument that Defendants violated 11 U.S.C. § 362 and 11 U.S.C. § 1301 is without merit.

(Doc. No. 56 at 5-6.) Separate analysis for § 1301 is unnecessary because the bankruptcy court granted Defendants relief for both the debtor and co-debtor stay. The bankruptcy court wrote,

> Debtor's opposition to the § 362(d)(4) request is off point in important respects. She seems to assert that any *in rem* relief would be ineffective because Debtor or her husband could file another case and simply invoke the co-debtor stay. But *in rem* relief encumbers the property itself. Thus, for two years there would be no stay as to the Property, in any bankruptcy, filed by anyone.

(See Doc. No. 45-5 at 7) (internal citations omitted.) See also In re Morris, 385 B.R. 823, 829 n.6 (E.D. Va. 2008) ("While § 1301 and § 362 are independent provisions, courts have generally allowed relief from the co-debtor stay on the same basis as that under § 362(d), including annulment."). Accordingly, Plaintiffs' argument does not establish clear error or manifest injustice.

---

[6] In their reply brief, Plaintiffs shift gears and argue that their § 1301 claim creates grounds for damages under 11 U.S.C. § 105. (Doc. No. 62 at 4-6.) Plaintiffs never raised § 105 as a cause of action in their third amended complaint. (Doc. No. 43.) And despite Plaintiffs' claim that "1301 and 362 are completely unrelated," (Doc. No. 62) Plaintiffs raised the two provisions under the same cause of action. (Doc. No. 43 at 22-28.) Even if Plaintiffs had originally stated a separate § 1301 claim, the bankruptcy court's stay relief resolved both § 362 and § 1301 claims, as discussed in this order and the Court's order granting Defendants' motion to dismiss. (Doc. No. 56 at 5-6.)

## B. Plaintiffs' Second and Fourth Claims Under 15 U.S.C. § 1692f(1) and 15 U.S.C. § 1692e(2)(A)

Plaintiffs contend that the Court misread Obduskey v. McCarthy & Holthus LLP, 139 S. Ct. 1029 (2019). Plaintiffs argue that Obduskey "is a very narrow decision with limited application and solely applies to entities engaged in no more than the '*enforcement of security interests*' with *steps required by state law*." (Doc. No. 58-1 at 13-14.) The Court invited the parties to submit supplemental briefing on Obduskey, and the parties did so. (Doc. Nos. 39-41.) Thus, Plaintiffs' Rule 59(e) motion improperly attempts to reargue an issue already presented to the Court.[7] Weeks, 246 F.3d at 1236.

Even then, Plaintiffs overstate the limits of Obduskey. As this Court wrote in its order granting Defendants' motion to dismiss, "but for § 1692f(6), those who engage in only nonjudicial foreclosure proceedings are not debt collectors within the meaning of the [FDCPA]." Obduskey, 139 S.Ct. at 1038. (Doc. No. 56 at 7.) Obduskey defines those "enforcing a security interest" to include more than just the law firms enforcing a security, since Obduskey recognized that FDCPA's provisions would also sweep in all who indirectly collect on security interests. Id. at 1036-37 ("So, even if nonjudicial foreclosure were not a *direct* attempt to collect a debt, because it aims to collect on a consumer's obligation by way of enforcing a security interest, it would be an *indirect* attempt to collect a debt."); see also id. at 1040-41 (Sotomayor, J., concurring) (agreeing with the majority opinion that FDCPA would sweep in both "the repo man" and "repossession agencies [which] engage in a means of collecting debts 'indirectly'"); Helms v. Wells Fargo Bank, N.A., 2019 WL 4013966, at *1 (9th Cir. Aug. 26, 2019) (citing Obduskey to affirm district

---

[7] In Plaintiffs' reply brief, they also argue that the Court erred "by failing to consider the status of the loan and if the primary definition of a debt collector applied." (Doc. No. 62 at 6.) Plaintiffs did not claim this as grounds for Rule 59(e) relief in their initial motion. (See Doc. No. 58-1.) Nonetheless, the claim does not raise grounds for Rule 59(e) relief because the status of the loan is relevant only to determine whether Defendants fell within a specific exclusion from the definition of debt collector under 15 U.S.C. § 1692a6(F)(iii). Since Obduskey established that Defendants did not fall within § 1692a(6)'s general definition of debt collectors, 139 S.Ct. at 1036-38, the Court need not address § 1692a6(F)(iii).

court's dismissal of plaintiff's FDCPA claim "arising from the foreclosure sale of his property").

Nor is Obduskey distinguishable from the present case because Obduskey approved of the enforcement of a security interest through "steps required by state law." Id. at 1040. Obduskey "assume[d] that the notices sent by [defendant] were antecedent steps required under state law to enforce a security interest" since "every nonjudicial foreclosure scheme of which we are aware involves notices to the homeowner." Id. at 1039. Though Obduskey did not extend its ruling to "abusive debt collection practices like repetitive nighttime phone calls," Obduskey, 139 S. Ct. at 1039-40, Plaintiffs did not sufficiently allege that Defendants acted contrary to their rights to enforce their security interest. As this Court ruled, "[h]ere, Plaintiffs have not sufficiently alleged that Select did not have a 'present right to possession of the property claimed as collateral through an enforceable security interest.'" (See Doc. No. 56 at 8-9.) Thus, Plaintiffs' claim does not provide grounds for Rule 59(e) reconsideration.

### C. Plaintiffs' Third Claim Under 15 U.S.C. § 1692f(6)

Plaintiffs argue that the Court erred by granting Defendants' motion to dismiss Plaintiffs' third claim due to Plaintiffs' allegations that the foreclosure sale was rescinded and the validity of the sale was in dispute. Plaintiffs argue that "[t]he August 24, 2018 Bankruptcy Court Order found the sale valid" and "[a]ccordingly, during the time the Order remained in effect DEFENDANTS no longer owned the property and DEFENDANTS['] debt was extinguished as a matter of law as found by the Bankruptcy Court." (Doc. No. 58-1 at 23-24.) This claim restates Plaintiffs' prior arguments, which the Court already considered in its order granting Defendants' motion to dismiss. (See Doc. No. 56 at 7-9.) Thus, this claim provides no basis for Rule 59(e) relief. Exxon Shipping Co., 554 U.S. at 485 n.5.

Even then, the August 24, 2018 bankruptcy order cited by Plaintiffs confirms the Court's dismissal of Plaintiffs' claim. Though Plaintiffs allege that the bankruptcy order validated the foreclosure sale and extinguished Select's right to send the notices at issue,

the order, as quoted by Plaintiffs, states:

> Movants may enforce their remedies by completing the foreclosure sale of the Property and the lender/Trustee may issue the Trustee's Deed upon sale, as if there were no automatic stay and Movants may obtain possession of the property in accordance with applicable nonbankruptcy law.

(Doc. No. 58-1 at 17) (quoting Doc. No. 45-3 at 131.) Thus, the order also recognized that the foreclosure sale had not been completed, in accord with the Court's ruling that, "according to Plaintiffs' allegations, Defendants rescinded the foreclosure sale, returned the funds to the third-party purchase, and then rescheduled a foreclosure sale" while "Plaintiff and the third-party litigated their rights to the property." (Doc. No. 56 at 9.) Plaintiffs' claim therefore does not establish clear error or manifest injustice.

### D. Plaintiffs' Fifth and Sixth Claims Under Cal. Civ. Code § 1788.17

Plaintiffs argue that the Court erred in dismissing Plaintiffs' Rosenthal Act claims because the Rosenthal Act contains a broader definition of "debt collector" than the FDCPA. Plaintiffs present another argument that the Court already considered, (Doc. No. 56 at 9.) and this claim is improperly made in a Rule 59(e) motion. Exxon Shipping Co., 554 U.S. at 485 n.5.

As the Court noted, "Plaintiff concedes that its Cal. Civ. Code § 1788.17 claims are premised on its FDCPA claims, and the Court had dismissed Plaintiffs' FDCPA claim." (Doc. No. 56 at 9.) Even if the Rosenthal Act had a broader definition of "debt collector" than the FDCPA, Plaintiffs do not state a separate cause of action under the Rosenthal Act that would merit relief. (Doc. No. 43 at 38-42.) They only raise a claim through a violation of the FDCPA, and asserting a violation of the FDCPA requires Defendants to be cognizable as debt collectors under the FDCPA. To the extent that the Rosenthal Act would subject nonjudicial foreclosures to FDCPA prohibitions beyond those listed in § 1692f(6), it would violate the FDCPA's statutory scheme and be preempted under federal law. 15 U.S.C. § 1692n (preempting state laws "with respect to debt collection practices . . . to the extent that those laws are inconsistent with [the FDCPA]"); Obduskey, 139 S. Ct. at 1038

(describing the FDCPA as a compromise under which "[t]he prohibitions contained in § 1692f(6) will cover security-interest enforcers, while the other 'debt collector' provisions of the Act will not"). Thus, Plaintiffs' Rosenthal Act claims do not merit Rule 59(e) reconsideration.

### E. Plaintiffs' Claims Under California Business and Professional Code § 17200

Finally, Plaintiffs argue that the Court erred in dismissing Plaintiffs' § 17200 claims because those claims were "[d]erivative of the forgoing [sic] claims which should not have been dismissed" and because the Court "should have [] consider[ed]" the allegation that Defendants deceived Plaintiffs "into thinking the [foreclosure] sale would not take place." (Doc. No. 68 at 22.) Again, these claims restate Plaintiffs' prior arguments, which the Court already considered. (See Doc. No. 56 at 10-11.) Accordingly, this claim provides no basis for Rule 59(e) relief. Exxon Shipping Co., 554 U.S. at 485 n.5.

### Conclusion

For the foregoing reasons, the Court denies Plaintiffs' motion to alter or amend the Court's July 17, 2019 order.

**IT IS SO ORDERED.**

DATED: September 19, 2019

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT